**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CURTIS JACKSON, SR.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **09 C 7992** |
| | ) | |
| **THE RENAISSANCE COLLABORATIVE,** | ) | |
| **INC., PATRICIA ABRAMS, TIFFANY** | ) | |
| **SLEDGE, PRISCILLA FOSTER, and** | ) | |
| **DENISE RANKIN,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Pursuant to the Rehabilitation and Fair Housing Acts, pro se plaintiff Curtis Jackson seeks monetary and injunctive relief from the Renaissance Collaborative (a non-profit organization that provides housing and support to homeless and disabled individuals) and four of its employees. According to Mr. Jackson, Renaissance denied him housing because he was disabled and its employees attempted to extort him for their own personal gain. The defendants' motion for summary judgment is before the court. Mr. Jackson also has filed a motion to reconsider the magistrate judge's order striking Mr. Jackson's motion to compel discovery responses based on his failure to notice the motion for presentment. For the following reasons, the defendants' motion for summary judgment is granted in its entirety and Mr. Jackson's motion to reconsider is denied.

**I.     Background**

The following facts are drawn from the parties' submissions. As Mr. Jackson is proceeding pro se, the court has construed his filings generously, as it has done throughout the entire pendency of this case.

**A.     The Renaissance Apartment Program**

The Renaissance Apartment Program provides 101 single room units for disabled, homeless adults. On site supportive services at the Apartment Program include employment education and training, job readiness, employment referrals and retention training, health and wellness support, and life skills coaching. In the Fall of 2009, Mr. Jackson sought to obtain housing through the Apartment Program.

To qualify for housing with the program, applicants must, among other things, be chronically homeless. The "chronic" part of this requirement refers to an unaccompanied homeless individual with a disabling condition who has been continuously homeless for at least

one year or has had at least four instances of homelessness in the past three years. The "homeless" part refers to being on the streets or in an emergency shelter. Transitional housing does not qualify. "Disabling condition" means a diagnosable substance abuse disorder, serious mental illness, developmental disability, or a chronic physical illness or disability, including the co-occurrence of two or more of these conditions. Proof of documented homelessness and disability is required to complete an application for housing.

### B.      Mr. Jackson's Application

Defendant Denise Rankin is Renaissance's property manager and defendant Priscilla Foster is the health and wellness manager. On November 11, 2009, Ms. Rankin and Ms. Foster met with Mr. Jackson as part of his application process. According to Ms. Rankin and Ms. Foster, Mr. Jackson did not provide personal references and adequate proof of chronic homelessness. Thus, they believed he was not eligible for the program. In his third amended complaint, however, Mr. Jackson alleges that he gave Ms. Rankin a "Chicago Department of Family & Support Services Supportive Housing Program Homeless Verification Form" dated November 10, 2009, stating that he had been homeless for two years. Third Amended Complaint, Dkt. 47, at p.6, Page ID#171.

Mr. Jackson asserts that he is obese, has bi-polar disorder, impaired mobility, a left shoulder that dislocates, and hypertension, and suffers from migraines, allergic rhinitis, and sinusitis. According to Mr. Jackson, during his interview, Ms. Rankin and Ms. Foster intimated that they would not process his application without a bribe because they knew he had some money from receiving Social Security benefits. *Id*. at pp.2, 4, Page ID#167, 169. In addition, he contends that when they met, Ms. Rankin told him his problems were such that he "need[s] to be in an old folks home" and called him "pitiful" for having bi-polar disorder. *Id*. at pp.3-4, Page ID#168-169.

Following the meeting, Ms. Rankin completed the form letter Renaissance sends to applicants who do not meet the program's requirements or are ineligible by checking off the sections of the form indicating that Mr. Jackson had failed to provide personal references and adequate proof of chronic homelessness. The letter advises applicants that they may seek review of the decision by sending a letter within 14 days. Mr. Jackson received the letter on or about November 22 or 23, 2009. He submitted a request for review. Renaissance asserts that the request was misplaced due to a clerical error. Mr. Jackson followed up by calling defendant Patricia Abrams, Renaissance's Executive Director, on December 22, 2009. She offered him an opportunity for review. In response, Mr. Jackson said, "This is not right; I did what I was asked to do." Dkt. 47 at p.7, Page ID#172. Following his interview, Mr. Jackson did not supplement his application with the additional documentation requested in Renaissance's letter.

### C.     Mr. Jackson's Federal Claims

Mr. Jackson filed a federal lawsuit in July of 2010 asserting claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Fair Housing Act, 42 U.S.C. §§ 3601-3631.[1]  The parties pursued discovery.  As noted above, this court and the assigned magistrate judge have given Mr. Jackson wide latitude and construed all of his filings generously as he is proceeding pro se.  The defendants' motion for summary judgment is before the court.  The court notes that the defendants provided Mr. Jackson with the notice to pro se litigants opposing summary judgment required by Local Rule 56.2.

## II.    Discussion

### A.     Standard for A Motion For Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992).  A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party.  *Id*.

To successfully oppose a motion for summary judgment, however, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, it must demonstrate that a genuine issue of fact exists.  *See id.* at 587; *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order").

## II.    Discussion

### A.     The Rehabilitation Act

Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, provides that an institution receiving federal funds (such as Renaissance) may not discriminate against an "otherwise qualified handicapped individual."  *Anderson v. University of Wisconsin*, 841 F.3d 737, 740 (7th Cir. 1988).  "In order to prevail on a claim of discrimination under the Rehabilitation Act, a

---

[1] Other claims were dismissed pursuant to 28 U.S.C. § 1915(d) upon initial screening. *See* Dkt. 46.

plaintiff must demonstrate that: (1) [he] is disabled as defined by the Act; (2) [he] is otherwise qualified for the position sought; (3) [he] has been excluded from the position solely because of [his] disability; and (4) the position exists as part of a program or activity receiving federal financial assistance." *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006).

"Section 504 is a civil rights provision that prohibits a federal grant recipient from discriminating against otherwise qualified handicapped individuals solely because of that handicap." *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d 1245, 1257 (7th Cir. 1997). Renaissance acknowledges that the "otherwise qualified" prong does not fit neatly into the traditional framework of § 504 Rehabilitation Act claims because Mr. Jackson suffers from multiple health conditions and the Rehabilitation Act is meant to ensure program accessibility to people. The defendants focus on the second and third prongs, contending that the record does not demonstrate that Mr. Jackson was "otherwise qualified" to receive the services he requested from Renaissance or that he was rejected based on his disability. They also assert that Mr. Jackson cannot bring an Rehabilitation Act against the individual defendants because they do not receive federal financial assistance.

The court finds the Seventh Circuit's decision in *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d at 1257, to be instructive. In *Mallett*, the disabled plaintiff received college financial aid from the Wisconsin Division of Vocational Rehabilitation ("DVR") pursuant to the Rehabilitation Act. After the plaintiff requested additional funds to attend graduate school, DVR told the plaintiff that it intended to close his file and discontinue his financial assistance. The plaintiff filed suit, contending, among other things, that the denial of financial aid violated the Rehabilitation Act.

The Seventh Circuit held that the plaintiff had failed to satisfy the "otherwise qualified" prong, explaining:

> [The plaintiff] was not "otherwise qualified" to receive vocational benefits from DVR. "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 406 (1979); *see also Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 120 (7th Cir. 1997). [The plaintiff] would not have been eligible to receive any rehabilitative services in the absence of his handicap. *See Flight v. Gloeckler*, 878 F.Supp. 424, 426 (N.D.N.Y. 1995) (concluding individual with disabilities is not "otherwise qualified" for Rehabilitation Act), *aff'd*, 68 F.3d 61 (2d Cir. 1995). DVR only treats individuals who qualify. "'Without a showing that the non-handicapped received the treatment denied to the 'otherwise qualified' handicapped, the appellant[ ] cannot assert that a violation of section 504 has occurred.'" *Grzan*, 104 F.3d at 121 (*quoting Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1494 (10th Cir. 1992). [The plaintiff] has failed to do so in this case.

*Id*. at 1257.

Here, Renaissance asserts that Mr. Jackson did not meet the program's eligibility requirements.  In support, they stress that all applicants were required to provide the same documentation and that Mr. Jackson did not provide the required personal references or adequate proof of chronic homelessness.  Mr. Jackson may have believed that the letter he provided was adequate.  The court, however, need not address his alleged belief as Mr. Jackson does not point to any evidence demonstrating that he provided references.  Moreover, no evidence indicates that Renaissance applied the reference requirement inconsistently.[2]  Renaissance, like DVR in the *Mallett* case, "only treats individuals who qualify."  *Id*.  No evidence shows that a similarly situated person without references, whether handicapped or not, received a spot in Renaissance's program.  Mr. Jackson, therefore, cannot establish that he was "otherwise qualified" and nevertheless failed to receive services.

The court also notes the parties' disagreement regarding the events following Renaissance's rejection of Mr. Jackson's application.  Renaissance contends it realized that Mr. Jackson's request for reconsideration was inadvertently misplaced but after he brought this to its attention, it offered him a chance for rehearing that he did not pursue.  Mr. Jackson asserts that he had a conversation with Tiffany Sledge, Chief Operating Officer of Renaissance, who said his appeal would be heard if and when she chose to consider it.  In response, he expressed his belief that this was unfair.  Dkt. 47 at Page ID#172.  It is clear, however, that Mr. Jackson was told in writing that he lacked references and was not considered to be chronically homeless as these issues are listed in the notice declining to offer housing that Mr. Jackson attaches to his response to the motion for summary judgment.  Dkt. 95, at Page ID#478-79.  Moreover, it is undisputed that Mr. Jackson did not attempt to address these issues.  He did not provide references and he chose to stand on the materials he submitted about chronic homelessness.  His view about the appeal process does not create a triable issue of fact as to whether he was "otherwise qualified" because, as discussed above, the record does not show that he was "otherwise qualified" and that the defendants nevertheless used the appeals process to deny him services that he otherwise was entitled to receive.

The defendants also stress that according to Mr. Jackson, his application was unfairly rejected because Renaissance employees told him he would be accepted only if he bribed them. The *Mallett* case is again on point.  The plaintiff in *Mallett* claimed that he was denied services based on an improper reason (DVR's decision not to support graduate education).  The Seventh

---

[2]  The court also acknowledges the defendants' reference to *Jackson v. McGaw YMCA Evanston*, No. 09 C 2449 (N.D. Ill.).  In that case, Mr. Jackson alleged that he resided at the McGaw YMCA from September 22, 2008, through April 20, 2009.  *See* No. 09 C 2449, Dkt. 34. According to the defendants, this recent stay meant that he was not "chronically homeless" as that term is used by Renaissance.  Mr. Jackson does not attempt to retract his allegations in the *McGaw* case.  The court will not address the admissibility and use of the complaint in the *McGaw* case as it is not necessary for resolution of the pending motion for summary judgment.

Circuit held that this failed "to demonstrate that [the plaintiff] was denied treatment 'solely by reason of his . . . handicap.'" *Id.*, *quoting* 29 U.S.C. § 794(a). It then elaborated:

> "The word solely provides the key: the discrimination must result from the handicap and from the handicap alone." *Johnson*, 971 F.2d at 1493 (establishing that discrimination does not result "solely by reason of [the] handicap" if others with the same handicap do not suffer the discrimination). [The plaintiff] alleges that DVR closed his file because of an agency policy disfavoring graduate school and because DVR's failure to follow its procedures prevented him from establishing his merit for this funding in his administrative appeals. Neither of these reasons is related to his handicap. *See Flight*, 68 F.3d at 64 (concluding § 504 is inapplicable when denial of funding was based on type of vehicle modification requested).

*Id.* at 1257.

Here, if the court accepts Mr. Jackson's version of events for purposes of the motion for summary judgment, Renaissance rejected him because he refused to bribe its employees. The negative decision, according to Mr. Jackson, was thus based on rogue employees' improper behavior. By definition, therefore, assuming Mr. Jackson's recitation of events is accurate, his rejection did not "result from the handicap and from the handicap alone," *Johnson by Johnson v. Thompson*, 971 F.2d at 1493, and "[r]egardless of whether the reasons why [the plaintiff] was denied [assistance] were legal or illegal, they were not based on his handicap," *Mallett v. Wisconsin Div. of Vocational Rehabilitation*, 130 F.3d at 1257. Accordingly, Mr. Jackson's Rehabilitation Act claim fails as he has not established that he was "otherwise qualified" or that he was excluded from Renaissance's program solely because of his disability. The defendants' motion for summary judgment on the Rehabilitation Act claim is, therefore, granted and the court will not consider their other arguments.

## B.    The Fair Housing Act

Mr. Jackson asserts generally that the defendants violated the Fair Housing Act when it declined to accept him into the Apartment Program. The defendants, with no objection from Mr. Jackson, construe his claim as arising under 42 U.S.C. § 3604(f)(1), which provides that it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter."

"To state a prima facie case of discrimination under the FHA, a plaintiff must show that he is 1) a member of a protected class; 2) the defendant was aware of plaintiff's class membership; 3) plaintiff was ready, willing and able to buy, rent or otherwise inhabit the dwelling; and 4) the defendant refused to deal with him." *Fincher v. South Bend Housing*

*Authority*, 612 F. Supp.2d 1009, 1025 (N.D. Ind. 2009), *citing Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). The court's consideration begins and ends with the "ready, willing and able to buy, rent or otherwise inhabit the dwelling" prong. To satisfy this prong, Mr. Jackson must show that he was qualified to rent through Renaissance's Apartment Program. As discussed, at the least, he did not provide references and thus did not meet admission criteria that were applied to all disabled individuals seeking housing at the Apartment Program. Accordingly, the defendants are entitled to summary judgment on Mr. Jackson's Housing Act claim. *See Hu v. Cantwell*, No. 06 C 6589, 2009 WL 1270142, at *4 (N.D. Ill. May 6, 2009) (putative buyer's inability to obtain financing meant she was not able and willing to buy the property).

### C. Mr. Jackson's Motion to Reconsider

On May 18, 2011, Mr. Jackson filed a motion to compel and noticed it for presentment before this court on May 24, 2011. On May 20, 2011, the court entered an order stating, "[t]his case having been referred, in part, for ruling on all nondispositive pretrial motions, plaintiff's motion to compel discovery responses to his request for admissions [79] shall be re-noticed before Magistrate Judge Brown. No appearance is required before this court on 5/24/2011." Mr. Jackson did not re-notice his motion. Thus, on January 4, 2012, Magistrate Judge Brown struck the motion pursuant to Local Rule 78.2, which requires movants to notice motions for presentment. On January 11, 2012, instead of re-noticing his motion before Magistrate Judge Brown, Mr. Jackson filed a motion with this court stating that Magistrate Judge Brown's January 4th order should be vacated because he was not aware that he needed to re-notice his motion and believed it would be automatically done for him.

Mr. Jackson has pursued litigation in federal court since April of 2009 to the present. He filed his case against the McGaw YMCA on April 4, 2009, and that case was closed on December 9, 2009. *Jackson v. McGaw YMCA Evanston*, No. 09 C 2449 (N.D. Ill.). A few weeks later on December 28, 2009, he filed the present case against Renaissance and its employees. He has vigorously litigated this matter throughout its pendency and taken advantage of the ability to interact with the courtroom deputies for this court as well as the assigned magistrate judge. This court and the magistrate judge have afforded him wide latitude given his pro se status. The court finds that even if he at first erroneously believed his motion would be heard without further court action, at the point that he received the magistrate judge's order, he knew this belief was incorrect. He nevertheless did not re-notice his motion before the magistrate judge and instead filed a motion to reconsider before this court.

Because the order at issue deals with discovery, this court's review is limited to considering whether it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A finding is clearly erroneous when the court is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). The court cannot make such a finding here. It is well-established that "[a]lthough the filings of pro se litigants are subject to more liberal review and interpretation, a pro se plaintiff must still comply with local rules."

*Navejar v. Iyiola*, No. 09 C 4108,WL 33901, at *1 (N.D. Ill. Jan 6, 2012). Mr. Jackson's assertion that his inaction was due to lack of knowledge is thus unavailing. In any event, upon receipt of the magistrate judge's order striking his motion and citing to the applicable rule, he chose to file a motion to reconsider with this court rather than attempting to have his motion heard before the magistrate judge.

Once Mr. Jackson was notified of the rule, any continued claim of lack of knowledge must fail. In addition, while the court has viewed his filings liberally, it is not required to ignore the applicable rules that govern all litigants, whether counseled or pro se. Accordingly, in an exercise of its discretion, Mr. Jackson's motion to reconsider is denied.

**III. Conclusion**

The court appreciates that Mr. Jackson believes that the defendants treated him unfairly. Nevertheless, for the reasons set forth above, the defendants' motion for summary judgment [Dkt. 85] is granted and Mr. Jackson's motion to reconsider the striking of his motion to compel [Dkt. 101] is denied. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

DATE: February 16, 2012

*Blanche M. Manning*
Blanche M. Manning
United States District Judge

-8-